**SUNLAND INDUSTRIES, Inc., a corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15310.**

United States Court of Appeals Ninth Circuit.

Oct. 16, 1957.

Rehearing Denied Nov. 22, 1957.

---

Kimble, Thomas, Snell, Jamison & Russell, Wm. N. Snell; Crossland, Crossland & Richardson, Fresno, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MATHEWS, HEALY and BARNES, Circuit Judges.

MATHEWS, Circuit Judge.

On March 15, 1944, appellant, Sunland Industries, Inc., a California corporation, filed its excess profits tax[1] return for 1943.[2] The total amount of tax shown on the return was $193,238.42. Of the $193,238.42, $129,469.74 was paid and collected at the time prescribed for payment, and $63,768.68 remained unpaid until September 13, 1948. Of the $63,-768.68, $1,100.59 was paid and collected on September 13, 1948, and $62,668.09 remained unpaid until December 14, 1949. Of the $62,668.09, $58,089.75 was paid and collected on December 14, 1949, and $4,578.34 remained unpaid until November, 1950.

With the $1,100.59, interest in the sum of $217.69 was paid and collected. Thus a total of $1,318.28 was paid and collected on September 13, 1948. With the $58,-089.75, interest in the sum of $20,040.96 was paid and collected. Thus a total of $78,130.71 was paid and collected on December 14, 1949. The $1,318.28 was assessed on August 20, 1948—24 days before it was paid and collected. The $78,130.71 was assessed on January 3, 1950—19 days after it was paid and collected. All collections mentioned above were made by the Collector of Internal Revenue for the First Collection District of California.

A claim for a refund of the $78,130.71 was filed by appellant on December 23, 1949, and was disallowed by the Commissioner of Internal Revenue on May 11, 1950. Alleging that the $78,130.71 was

---

1. The excess profits tax referred to in this opinion was a tax imposed by subchapter E of chapter 2 of the Internal Revenue Code of 1939. Subchapter E was added to chapter 2 on October 8, 1940. From October 8, 1940, to March 7, 1941, subchapter E constituted §§ 710–730 of the Internal Revenue Code of 1939. Six sections were added to subchapter E—three on March 7, 1941, and three on October 21, 1942. Thereafter subchapter E constituted §§ 710–736 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, §§ 710–736.

2. Appellant's taxable year was the calendar year.

erroneously and illegally assessed and collected, appellant, on May 1, 1952, brought a civil action for its recovery. Since the collector who collected the $78,-130.71 was not in office on May 1, 1952, the action was brought against appellee, the United States, in the United States District Court for the Southern District of California.[3] Appellee answered, a trial was had, findings of fact and conclusions of law were stated, and on April 19, 1956, a judgment was entered for appellee. This appeal is from the judgment.

Appellant contends that the $78,130.-71 was assessed and collected after the expiration of the period of limitation properly applicable thereto and, therefore, was erroneously and illegally assessed and collected.[4] In determining whether the $78,130.71 was assessed and collected after the expiration of the period of limitation properly applicable thereto, it is necessary to determine what that period was. This question will now be considered.

Section 710(a) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 710(a) (5), hereafter called the Code, provided: "Deferment of payment in case of abnormality. If the adjusted excess profits net income (computed without reference to section 722)[5] for the taxable year of a taxpayer which claims on its return, in accordance with regulations prescribed by the Commissioner[6] with the approval of the Secretary,[7] the benefits of section 722,[8] is in excess of 50 per centum of its normal tax net income for such year, computed without the credit provided in section 26(e)[9] (relating to adjusted excess profits net income), the amount of tax payable at the time prescribed for payment may be reduced by an amount equal to 33 per centum of the amount of the reduction in the tax so claimed.[10] For the purposes of section 271,[11] if the tax payable is the tax so reduced, the tax so reduced shall be considered the amount shown on the return. Notwithstanding any other provision of law or rule of law, to the extent that any amount of tax remaining unpaid pursuant to this paragraph[12] is in excess of the reduction in tax finally determined under section 722, such excess may be assessed at any time before the expiration of one year after such final determination."

Treasury Regulations 112, hereafter called the Regulations, were prescribed by the Commissioner with the approval of the Secretary and were applicable to appellant's excess profits tax for 1943. Section 35.710–5 of the Regulations provided, inter alia: "A taxpayer which claims to be entitled to a tax deferment under the provisions of section 710(a) (5) and of this section[13] must, at the time of filing its excess profits tax return on Form 1121, attach thereto an application for relief under section 722[14] on Form 991 (revised January, 1943). The application must set forth under oath each ground under section 722 upon which the application for relief is based and facts sufficient to apprise the Commissioner of the exact basis thereof and

---

3. See 28 U.S.C.A. § 1346(a) (1).

4. See § 3770(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3770(a) (2).

5. Section 722 of the Code, 26 U.S.C.A. Excess Profits Taxes § 722.

6. The Commissioner of Internal Revenue.

7. The Secretary of the Treasury.

8. The benefits of § 722 consisted of a reduction in the excess profits tax shown on the taxpayer's return.

9. Section 26(e) of the Code.

10. Thus, pending final determination of its claim, the taxpayer could defer payment of an amount of tax equal to 33% of the claimed reduction in the tax.

11. Section 271 of the Code, 26 U.S.C.A. § 271.

12. The "paragraph" referred to was § 710 (a) (5), supra.

13. Section 35.710–5 of the Regulations.

14. The relief referred to consisted of a reduction in the tax shown on the return. Thus claiming the benefits of § 722 and applying for relief under § 722 were one and the same. See footnote 8.

to establish eligibility for relief, as well as data and information in sufficient detail to establish the amount of constructive average base period net income claimed, the amount of tax reduction claimed by the use of section 722, and the amount of tax deferment claimed on the return. In any case in which an application for relief on Form 991 (revised January, 1943) is not so attached to the excess profits tax return, the taxpayer shall not be deemed to have claimed on its return the benefits of section 722."

As required by the Regulations, appellant's return for 1943 was on Form 1121. Line 17 of Form 1121 was as follows: "17. Amount deferred by reason of the application of section 710(a) (5) (relating to abnormality under section 722) (attach schedule) [15] ...... $......" On its return for 1943, appellant inserted in line 17 words and figures making it read as follows: "17. Amount deferred by reason of the application of section 710(a) (5) (relating to abnormality under section 722) (attach schedule) in accordance claim on file 1942 [16] $63,768,-68." Thus appellant, on its return for 1943, claimed to be entitled to a tax deferment of $63,768.68 under the provisions of § 710(a) (5) and thereby impliedly, if not expressly, claimed the benefits of § 722.

With respect to its excess profits tax for 1943, appellant filed an application for relief under § 722 on Form 991 (revised January, 1943), but did not attach it to the return and did not file it until March 12, 1946. However, the Commissioner treated it as if it had been attached to and filed with the return. Thus the Commissioner waived the requirement of § 35.710–5 that the application be attached to the return at the time of filing the return.

■■ The requirement was not for the benefit of appellant, but was for the benefit of appellee. Hence the Commissioner had a right to waive the requirement, as he did.[17] Appellant had no right to invoke the requirement or to profit by its noncompliance therewith.[18]

■ There was no final determination of the application until January 23, 1950, or later. On or after January 23, 1950, it was finally determined that appellant was not entitled to any relief under § 722, which is to say, it was finally determined that appellant was not entitled to any reduction in the excess profits tax shown on the return;[19] and the application was accordingly denied. It follows that the period of limitation properly applicable to the $78,130.71 mentioned above was the one-year period prescribed in § 710(a) (5) [20]—a period which began on or after January 23, 1950, and expired on or after January 23, 1951.

As indicated above, the $78,130.71 was collected on December 14, 1949, and was assessed on January 3, 1950. We therefore reject appellant's contention that the $78,130.71 was assessed and collected after the expiration of the period of limitation properly applicable thereto.

Other contentions of appellant are so obviously lacking in merit as not to require discussion.

Judgment affirmed.

---

15. Meaning, we suppose, an application for relief under § 722 on Form 991 (revised January, 1943).

16. The phrase "in accordance claim on file 1942" referred to an application for relief under § 722 on Form 991 (revised January, 1943) filed by appellant on September 13, 1943, with respect to its excess profits tax for 1942. That application was intended to be, and was, treated as a part of appellant's return for 1942 and as a part of appellant's return for 1943.

17. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619.

18. See cases cited in footnote 17.

19. The exact date of the determination does not clearly appear from the record. However, the record clearly shows that it was not earlier than January 23, 1950.

20. See the last sentence of § 710(a) (5).